*135 OPINION of the Court, bv
Judge Logaw.
The appellant exhibited his bill to recover from the appellees the legal title to land, for which he alleges the better right. He claims under the following entries:
“ 15th May 1780- — Robert Fryer thters 500 acres upbh a treasury warrant, on Stoner’s fork ol Licking, at the forks thereof, about 1 1-2 milts above Sand lick, in the middle of the creek, to include a cabin where there is a cherry tree marked D. C. beginning near the fork and running up and east for quantity.”
“ 19th May 1780 — Robert Fryer enters £00 acres Upon a treasury warrant on Stonet’s fork of Licking, above a sand lick in the middle of the creek, adjoining his former entry of 500 acres and below the same.” Stoner’s fork of Licking was well, and sufficiently known, but it does not appear that any place had acquired the general reputation of its foks; and there are different forks on it, one of which, at the mouth of Strode’s creek, seems to have been considered larger, and as well or better fitting the call for its folks, than the place claimed by the complainant. If, therefore, the entry depended upon this call only, it would clearly Ee void for uncertainty j but it combines other calls which may designate with certainty the folk of Stoner intended. The call for “ Sand lick in the middle of *the creek,” represented to be about 1 1-2 milts below the fork intended, tends strongly, if not conclusively to , shew the fork intended. Saacl lick is proven to have been a place of no inconsiderable note among the hunters and people in the neighboring stations about the titíie this entry was made. Indeed it is proven to have been well known, and in the year 1780 to have been ge-aerally called by that name. But independent of this acquired, name, its description; in the middle ©f the *136 creek and lying about 1 1-2 miles below the forks, could leave no room to doubt with regard to the place called for. If, however, a doubt could have been entertained, it seems that the additional call for the cabin identified by the cherry tree marked D. C. would incontestibly have removed such a doubt, especially as this cabin stood immediately below the forks of the creek.
Entry of cco _acres “ on Sto-ner’s fork above a fand lick in the middle of the creek^ adjoining his former entry of 500 acres* and below the (ame’
The firft ex. preflions m this entry are only intended as general defcnption of the neighborhood, the locative ex. preflions are “ adjoining, and below the lame’ • — M be furvey. ed In a fqu&re, See.
So.Vr as a pre-empúoner for aClunl fettle-meat by his tn. fry With the fur. vcj-or departs from the leca- ■ ticn in the certi4 jhate, he lofes the dignity of his pre emption
The certificate of the com. miflionersiscon clufive as to the right of preemption.
The improve, ment claimed being notorious as thepre-emp. tior’ef’s !mpro.-mm, ted having' no other, thécer.i' dicare muft Jett'ltmtnt, but only walking provement wu m,t a" *⅛“1 and chopping,
*136 We are therefore of opinion that the description given points out with certainty the particular fork intended, and that the entry ought to be supported.
It remains now to be determined how this entry should be surveyed. Whether it should ire surveyed in a rectangular figure, or be made by running up with the meanders of the creek, is the question of doubt. The main fork bears off from the forks about 45 degrees west of south ; and the other fork is about the same degree east of south : so that by running the first line due south, will pass about half way between the two forks. This mode, however, of surveying the entry we do not think correct.
The entry calls to lie on Stoner’s font of Licking." This, though a call of general description, seems entitled to some weight in rtlation^to the present question.. It shews, when taken with the call to run up, that the creek was in the contemplation of the locator. To suppose otherwise, gives no precision to the call : it would fix no definite base between the forks, but is left to construction from the course of the second line to run east; and the course of this line, it is contended regulates and controls that of the first to a due south. But why, it may with propriety be asked, did not the locator call for a south course in the first, as he did for an east course in the second line ? The answer seems evident, because he preferred running up the creek, and as the creek did not bear that course he rejected the one expression and made use of the other. Besides, this mode of laying the claim is less prejudicial to the adversary claim, and should therefore, where there is great doubt, be adopted.
The survey should be made beginning immediately below the cabin near the forks of the creek, thence up the meanders of the main creek southwestwardly so far that when reduced to a direct line it will form the base of a square of500acres; thence east so far that aline at *137 i-ight angles north ant! thence west to the beginning, in-eluding the cabin, will include 500 acres. ' °
, , r , , examine the second cutty of the appei-We .11.! lant. it itoner's fork, “ adjoining his below the same.” lormer entry o! 500 anno, uuu» u:c same.
The call lor Stoner’s fork of Licking, we think was only intended to designate the quarter of the country, I and notas a locative, call. The expression, to adjoin the former entry below- the same, stems as if intended to fix the.latter by the lower boundary of the former. This entry then should be surveyed in a square, joining the other below.
As the surveys when thus made will*interfere with the claim of the appellees, and cover part of the land comprehended bv the survey of the appellant, it is necessary we should in the next place investigate the claim <bf the appellees, because if valid and has been surveyed conformable to location and entry, it is the superior title, and must prt vaii’again^t the appellant’s.
The appellees hold under a pre-1motion of 400 acres granted to Nicholas George in December 1779, containing the following location, to .wit, “ lying on each side of a small branch of Licfting, about two miles west óf Edward Hall’s land, by .making an actual, settlement in May 1779, to. inejude the said settlement.’*
In December 1782, he entered his pre-emption with th® surveyor, tk to include his improvement on the waters of Licking in the centre, the first line to run east 258 poles.”
The survey made upon this entry runs to the cardinal points, including the improvement in the centre.
We shall first examine the location contained in the certificate, for upon the validity of it the pre-emptive dignity and superiority of the appellees’ claim in this contest must depend ; .because, so far as the entry with the surveyor departs from it, the claim is inferior, as .the entry is subsequent to the appellant’s entries.
The evidence in the cause 'satisfactorily establishes , George’s improvement. This improvement was sitúa-, ted on Harper’s trace, a trace proven to have been well khown about the time George obtained his certificate. But the improvement itself is prpven to have been sufficiently known to the people*Gf* the neighboring stations. A question, howeve^f occurs here, whe *138 ther the improvement shewn can be considered as the actual settlement called for in the certificate ?
None of those marks or characteristics which in the general constitute an actual settlement in its most common acceptation, are proven to have belonged to it, except some marking and chopping. But be this as it may, it was a question proper for the determination of the commissioners^and their decision must in this case be received as conclusive.
The evidence, however, is proper for consideration in repelling the fact of this being the place the certificate called for ; because the actual settlement is descriptive of the place located. Whether the location in the certificate applies to the place in dispute, on which it appears an actual settlement had not been made, is truly a question of no little importance. But from the evidence in relation to George’s improvement, we think the place designated in the plat was the only improvement he had in the country,^ and the one called for ia his certificate.
This having been sufficiently identified, and its notoriety satisfactorily proven, and whether it constituted an actual settlement having been decided by the commissioners, we shall proceed in the next place to consider the manner of surveying the claim — first, according to the location with the commissioners ; and secondly, how far that mode of laying it has been varied by lh® entry with the surveyor-
1st. With regard to the location contained in the certificate. This calls to We ' on each side of a small branch, &c. to include the settlement. The branch called for is not laid down ; there is evidence in the cause which speaks of it as passing through, or being near to the improvement ; but the branch is made one of the locative calk, and must be regarded accordingly. It may materially change: the position of the survey instead, for instance, of running to the cardinal points, it will vary its position according to the course of the branch within the limits of the survey. It is evident, however, that the land which it will embrace will be mostly the same which is comprehended within the present survey. We think, therefore, that the survey should be made in a^jtpre, running its lines parallel with the general cour# of so much of the branch as *139 will'be included within the survey, making a (a) half way point between the improvement and the nearest part of the branch to it the centre of the survey. And the entry with the surveyor of the pre emption should be surveyed running the northern and southern boundaries 258 poles east and west, including the improvement in the centre between those lines and the lines closing the survey, at right angles thereto, forming the east and west boundaries. For all the land lying within the ap-pellees’ present survey, that will be comprehended within both surveys as herein directed to belaid down, the ap-pellees have the better right: and lor the residue, lying within the appellant’s surveys as made, and which will also be included by the same survey as herein directed to be made, the appellant has the superior right; and the appellees ought to be decreed to convey without warranty.
Wherefore it is decreed and ordered that the decree of the circuit court' dismissing the appellant’s bill, be reversed ; that the cause be remanded to said court, in order that the foregoing opinion may be carried into effect by directing such surveys to be made, and such other decrees and orders as may be consistent with equity. And it is farther decreed and ordered that the appellees do pay to the appellant his costs he re is expended. ,

 Speed vs. Severe, vol. 2, 133.