Judge Marshall
delivered the Opinion of the Court in this case — in the decision of which, Judge Ewing took no part,
Gossom exhibited his bill in chancery against Sharp’s heirs &c., to obtain relief against their elder patents covering four hundred acres of land, which he claims under the following certificate, issued under the laws of this State:—
“ Warren County, set. June Court, 1801. I do here- “ by certify that Simon McNeil is entitled to four hun- “ dred acres of land by virtue of his having taken up “ and improved the same, agreeably to an act of assem- “ bly for the settling of unappropriated lands in this “ State: viz. Simon McNeil enters four hundred acres of “ land betwixt the Trunk spring and the Six Mile Tim- “ ber: beginning at the deep sink hole, northwardly, “ thence eastwardly, so as to include his improvement.”
On which is the following assignment: — “For a val- “ uable consideration, I, as attorney in fact for Simon “ McNeil, to whom the within certificate was granted, “ do assign and transfer all the right and title of the “ within certificate to John Dixon. As the said Simon “ McNeil never resided on said land as the law directs, “ I make the above assignment on the said Dixon’s “ agreeing to risk that loss, if any may incur on that “ account. Witness my hand and seal, this 19th day of “August, 1809. John McNeil, [Seal.]”
In February, 1816, John Dixon, as assignee, entered the land with the surveyor, pursuing exactly the original location; in the same year, it was surveyed for him, and in 1827, the patent issued to him as assignee.
The complainant derives title by deeds from the heirs of John Dixon.
The defendants set up three patents anterior in date to that of Dixon, upon which they rely. The whole *141 case, therefore,.turns upon the validity of the complainant’s claim.
The assignee of a settlement certificate, who has obtained the patent, has a right to assert, in support of his title, all the equities attached to the certificate; and, in a controveisy with an adverse Claimant , the question whether the assignee holds subject to an equity in his assignor, or whether the assignment is genuine, is not material. The condition of a purchaser under the assignee, is at least as good as his was.
If a settlement certificate does not,upon its face, expt ess a case not warranting the adjudication by which it was granted, and is expressed in such general terms as may comport with the law — it is sufficient, and will receive aeon struction conformable to the law under which it purports to have been granted — And, the effect of it is, that the settler is entitled to the land for having settled it; and the certificate is conclusive against the commonwealth, and upon which the all subsequent claimants under her, and of the fact of actual settlement right is founded. Vide post.
A question is made upon the sufficiency of the assignment on the certificate, to vest any right in Dixon, and to authorize the subsequent proceedings by which the title was perfected in his name. On this subject, it is sufficient to say that, whatever might have been the effect of the assignment as between Dixon and Simon McNeil, the patent has invested the former with the legal title, and with the right of asserting, in support of that title, all the equity attached to the original certificate, in a contest wilh adversary claimants. Whether he held the title subject to an equity in McNeil or not, would be immaterial in such a suit (Oldham vs. Rowan, 3 Bibb;) as would also be the question whether the, assignment was genuine, (Speed vs. Patton's heirs, 3 Bibb, 427.) His alienee, of course, has the same right, and is at least ds little liable to be disturbed by these questions in a suit with strangers.
An objection is also made to the sufficiency of the certificate upon its face. But this objection is sufficiently answered by the cases of McMin vs. Stafford, 2 Bibb, 488; McIlhenny’s Heirs vs. Biggerstaff, 3 Littell, 156, 160; Loftus vs. Mitchell, 3 Marshall, 595, and many other cases, which affirm or maintain the principle that, “if the certificate does not on its face express a case not warranting the adjudication, but is expressed in such general terms as may comport with the law,” it is sufficient, and will receive á construction conformable to the law under which it purports to have been granted.
The effect of the certificate, under this construction, is, that Simon McNeil was adjudged to be entitled to four hundred acres of land, as described in the location, for his having settled the same agreeably to the act of assembly &c. And (as decided in many cases, and not now disputed,) it is conclusive, against the Commonwealth and all subsequent claimants under her, of his right to the four hundred acres thus adjudged or granted *142 to him, and also, of the fact of actual settlement on •which that right is founded. Fryer vs. Holder’s Heirs, 3 Bibb, 138; Marshall vs. Rough's Heirs, 2 Bibb, 629; Speed vs. Patton's Heirs, 3 Bibb, 427 &c., and the cases before cited.
Every certificate of settlement —. to be valid under the law, and end tie the claimant to the land — must contain a special location,describing as accurately as may be, the land iutended to be included,with such references to external objects, as will enable subsequent locators , With reasonable certainty, to appropriate the adjacent residuum. The entry in this case — ‘400 acres of land betwixt the Trunk spring and the Six mile Timber, beginning at the deep sink hole, north-wardly , thence eastwardly, so as to include his (the grantee’s) improvement’— held to be sufficiently special.
Explanation of the mode in which the survey must be made,to conform to the above entry.
Having given this construction and effect to the certificate, we proceed to enquire whether, in giving location to the land intended to be appropriated, the requisites of the law have been complied with. The law requires that the certificate shall contain a special location, describing, as accurately as maybe, the land intended to be included. And its reference to external objects must be such as to enable subsequent locators, with reasonable certainty, to ascertain and appropriate the adjacent residuum.
Upon the face of the entry or location, we perceive no want of speciality, or of any other requisite of a legal and valid entry. And if the place of beginning and the improvement called for be sufficiently established by proof, there is no difficulty in laying down the entry according 'to its calls. The calls for the “Trunk Spring” and the “Six mile Timber,” are general, serving only to show the situation of the land in reference to those objects, and to lead to the vicinity in which the enquirer is to search for the locative objects which give its exact position and shape. These are “ the deep sink hole” called for as the beginning, and the “improvement,” which is to be included; which being sufficient to give shape and exact position to the location, control the flexible calls “Northwardly” and “Eastwardly.” Hendricks vs Bell, 1 Bibb, 138; Craig vs Hawkins, Ib.54.
Upon the establishment of the deep sink hole, and ‘the improvement’ called for, we are of opinion that, in order to give due effect to the calls, to begin at the first and include the second of these objects, and, at the same time, to adhere to the square figure, if the distance of these two objects will permit, and if not, still to adhere to the rectangular figure, and to give due effect to the improvement, in determining the position of the land, a diagonal line should be laid from the deep sink hole, passing through the improvement; and if a square of four hundred *143 acres constructed on this diagonal, will include the improvement, as seems probable from the position of the objects as presented on the plat, the entry should be surveyed that manner, but if such a square will not extend so as into include the improvement, the entry should be surveyed in the figure of a rectangular parallelogram, constructed on the same diagonal. And, as in all cases where, in consequence of the distance between the two objects, the figure produced in this way will not be a square, there may be two equal rectangular parallelograms formed o.n the same diagonal, the consequence is that, where that would be the case, the location is good only for the land covered by both in common.
The position and shape of the tract embraced by an entry, depending upon the objects called for, they must be identified, and proved to have had such correspondence with the name and description given, as to enable a subsequent locator, with rea sonable diligence to ascei tain their position & recog nize them, with reasonable certainty, as the objects called for. And—
Conclusion, upon much conflicting testimony , that the place which the pltf. contends is desig nated in the certificate under which he claims, as ‘thedeep sink hole,’ is sufficiently identified as such, by the proof, and shown to be the place generally so called at the date of the certificate.
As the position, and shape which would thus be given to the land, depends upon both of the objects, it is absolutely essential to the validity of the claim founded on this location, that both should be identified, and proved to have had such correspondence with the name or des-cripton given, as to enable a subsequent locator, with reasonable diligence, to ascertain their position, and to recognize them, with reasonable certainty, as the objects called for.
The Trunk spring and the Six mile Timber are proved to have been well known by those names, at the date of the entry, as well as before and since, and are situated at the distance of three or four miles apart. The land being, according to the location, to lie between these two places, and also, to lie northwardly and eastwardly from the beginning, it might be expected from the face of the entry, that the place of beginning was to be found on the south side of a'direct line from one to the other of th'ese places, and at such a distance that the quantity being laid off in appropriate form, the direct line would pass through it. The sink hole claimed by the complainant, as the place of beginning, is about half a mile south of the direct line referred to, and nearly midway between the Trunk spring and the Six mile Timber; and he shows an improvement in sight of the path, between these two places, a short distance in a northeastwardly direction, from the same sink hole, and which he claims as the improvement called for.
*144 Another sink is shown by the defendants, which they say was known as the deep sink hole at the date of the complainant’s location, and at which they contend his entry should begin. This place is about a mile further south than the other, and nearly that much farther from the direct line between the Trunk spring and the Six mile Timber, and it is not shown that, at the date of the entry, there was any improvement near it, to answer the call to include McNeil’s improvement. It is apparent, therefore, that, as it respects mere position, relatively to the other calls of the entry, the first of these two sinks has the advantage.
A comparison of the two objects with a view to determining which of them is most appropriately described by the descriptive terms, (“the deep sink hole’’’) used in the entry, results, also, in favor of the first, which is described as a chasm, about seventy yards across the top, and nearly in a circular shape, situated in the midst of a rich and level plane in the barrens, from which it sinks down abruptly, to the depth of one hundred and ten feet. To that distance it is surrounded by walls of limestone rock, nearly perpendicular, and in some places hanging over; and from the bottom of these walls, it descends, by a slope from all sides (formed doubtless by the earth falling from its walls,) to the additional depth of thirty or forty perpendicular feet, having large sugar trees and other timber growing at the bottom, different from the growth which is found in the adjacent plain. The other is described as being about as deep as the first, below the surrounding level; but it falls off more gradually from the surface, is about a quarter of a mile across from brink to brink, and is accessible at one end for wragons, in which wood has been drawn from the bottom. A stranger, searching for the deep sinkhole, would scarcely hesitate,upon seeing these two places, to determine that, so far as names are tobe considered as descriptive of the qualities of natural objects, the first was clearly entitled to the distinguishing appellation of the “deep sink hole;” and it can hardly be doubted that, those who first became acquainted with the two objects would have given to the first, rather *145 than to the last of these places, this descriptive name, unless some casual circumstance or association might have appropriated some other name, unconnected with its actual appearance and characteristics. If the call for the deep sink be considered as a call for the object by name, these considerations, though entitled to some weight, are not decisive of the question whether the remarkable sink, claimed by the complainant as his beginning was known at the date of his entry, as “the deep sink hole.” Upon the questions whether it was then notorious by that name, and whether it was the only sink in the neighborhood notorious by that name, a mass of testimony has been taken by each party, and much has been said by the witnesses which it is not easy to reconcile.
It is established on all hands, that the sink claimed by the complainant, is now, and has for many years been known by the name of 4 the wolf sink’ — originating in the fact that at some remote period, a horse fell into it, and was there preyed on by a wolf. The precise date of this occurrence cannot be ascertained, but we are inclined to the opinion, from the evidence, that it was before the date of the entry. Some of the witnesses say the year before; some fix it by reference, at a still earlier period, while some say it was after the date of the entry. Few of them, however, pretend to speak with any definiteness on the subject. But whenever this circumstance may have occurred, it is not only probable, but is proved by many witnesses, that before the occurrence and for some time afterwards and at the date of this entry, this sink was notoriously known by the name of4 the deep sink hole,’ 'to a large majority of the persons living near the Trunk spring and the Six mile Timber and in the immediate vicinity of the objects themselves; and that the other sink was not known by that name, but was called by some, th.e big sink, by some the poplar sink, and by others the Jim mile sink; and that, even after the name of the wolf sink had become well known, the same place would have been pointed out to any person enquiring for it by the name of 4 the deep sink hole.’
It is stated by many witnesses, on the other hand, that the wolf sink never was known by the name of the *146 deep sink hole, but was known exclusively by the name of the wolf sink at and before and after the date of the entry; and that the other sink was then notorious in the neighborhood, as c the deep sink hole.’ From the contradictory statements of so many witnesses, it might seem that a subsequent locator would be much perplexed in his enquiries for the object called for in this entry. But the difficulty is rather apparant than real. In June, 1801, and for some time afterwards, he would have found but few of the defendant’s witnesses in the immediate vicinity of these remarkable sinks. His en-quiries at a distance would probably have been for the Trunk spring or the Six mile Timber, and judging from the depositions in this case, he would scarcely have met with an individual in the immediate vicinity of either of these places, or of the two sinks, who in answer to his enquiry for the deep sink hole, would not have directed him to that claimed by the complainant. He might, indeed have heard, when at the distance of ten miles or more from the spot, that the deep sink hole was a mile further south. But when he got upon the ground, and came to understand the relative position of the several objects referred to in the entry; when he looked at the two sinks now brought into competition, and received information as to their names from the people resident in the vicinity, of whom scarcely any knew the most southwardly sink as the deep sink, while nearly all knew the other by that name; he must have been satisfied that, the most northwardly sink, though some might even then have called it the wolf sink, was the deep sink hole called for in the entry.
We might account for some of the discrepancies in the testimony which have been noticed. But it is sufficient to say that, considering the number of the witnesses, and their opportunities of knowing the objects themselves, as well as their names in the neighborhood at the date of the entry; we think the decided preponderance of the evidence on the subject of the deep sink hole, is, that, the place now known as the wolf sink, and at which the complainant’s survey commences, was, at the date of the entry, notoriously known by the name of the deep sink hole at the places called for in *147 the entry; that it was the only object then commonly called by the same name in that immediate vicinity, and that it would have been pointed out by almost every one resident in the vicinity, to any person en-quiring for an object by that name.
The commission ers who were au thorized to grant settlement certificates, had jurisdiction to decide whether a party claiming a certificated had made such a settlement as the law required. And, in a controversy, in the court of appeals, between a settler’s title and a conflicting patent — tho’ it may appear, that the supposed settlement was but the foundation of a cabin, or merely ‘marking and chopping’: still the certificate granted, is evidence of an adjudication in its favor, which cannot be reversed or disregarded. Hence — 1. In identifying the place or object called for as a settlement, in a certificate granted for an actual settlement, it is not necessary to prove, by direct evidence to the-satisfaction of this court, that the grantee, or any other person, hod actually settled at the place. 2. It is not necessary to prove, that any improvement bearing the marks and characteristics of an actual settlement, exist, or existed, at the place claimed as the position of the object called for, as a settlement. 3. The want of such marks and characteristics does not conclusively prove, that the improvement claimed, is not the object called for as a settlement; but, notwithstanding the absence of such characteristics, it may be identified by reference to other circumstances and considerations.-But, where a settlement, or an improvement, is one of the calls of an entry, upon which its location and shape depend, the evidence of the appearance of the settlement, or the extent of the improvement, must be considered, in order to determine whether, at the date of the entry, a subsequent locator, in locating the adjoining residuum, could have found and identified the object, and have ascertained the position and boundaries depending upon it. — And, it may be identified (1.) by proving directly that it was the grantee’s actual settlement, made and resided'on by him, which the character of the improvement renders, at least highly improbable; or (2.) by proving that it was notoriously known as his settlement, which would be sufficient, whatever may be the character of the improvement; or (3.) by showing that it was tho, very improvement for which the certificate was granted, and that, upon such enquiry into facts, ns every subsequent locator was bound to make, he could have no reasonable doubt that it was so.
We are also of opinion that, the improvement of Simon McNeil, though of a very slight character, is proved to have been known in the neighborhood as his improvement, at the date of the certificate and before and afterwards; and that its position, as claimed by the complainant, is sufficiently identified, and corresponds with the calls of the location, considering it as an ordinary entry; so that, beginning at the wolf sink, and laying down the entry as before directed, it would be included in a rectangular figure of good shape, and probably in a square containing four hundred acres. If, therefore, this were an ordinary entry, to be construed by the ordinary import of its own terms, and to be sustained by the notoriety and indentity of the objects called for, and their adaptation to the calls of the entry; there could be no doubt that it must prevail over the elder patents of the defendants, founded on subsequent and perhaps inferior entries.
But it is contended that, as the certificate is for an actual settlement, the call to include his improvement *148 must be understood as if it were a call for ‘ his settlement;’ and that, as the improvement shown has none of the characteristics of an actual settlement, the claimant unc*er the certificate has wholly failed to establish this locative call. If it were conceded that, according to the legal effect of the certificate, the call for the improvement should be understood as a call for the settlement, still, as the call is actually for the improvement, it would not necessarily follow from the concession, that the actual language used would not and should not have some effect upon the mind of a subsequent locator, in designating the character of the object in tended to be called for.
But supposing that the word settlement had been actually used, we cannot admit, as contended for, that even that call could not be sufficiently identified, for all the purposes of the location, without direct proof to the satisfaction of this Court, that the improvement claimed as the one intended, is the precise spot where the grantee of the certificate had settled himself prior to the grant.
In the case of Fryer vs. Holder's Heirs, (3 Bibb, 137,) the appellees claimed under a certificate granting four hundred acres to Nicholas George, by the following location: viz. “Lying on each side of a small branch of “ Licking, about two miles west of Edward Hall’s land, “ by making an actual settlement in 1779, to include “ the said settlement.” It will be perceived that, in this location, the ‘actual settlement’ is not only expressly called foi-, but is the only locative call that can determine the position of the claim. It is impossible, therefore, by any construction, to make the location of McNeil refer more explicitly to an actual settlement than that does which has just been quoted; and it is impossible to make the validity of his claim depend more entirely upon the identification of the object called for as an actual settlement, than the claim under George’s entry depended, as a preemption right, upon the identification of the settlement called for by it, in the same way.
In that case, after stating that the improvement *149 claimed as the one called for, was sufficiently known, the Court puts the question explicitly — whether it can be considered as the actual settlement called for in the certificate?
“ None of those marks or characteristics (say the “ Court,) which in the general constitute an actual set- “ tlement in its most common acceptation, are proven “ to have belonged' to it, except some chopping and “ marking. But be this as it may, it was a question “ proper for the determination of the commissioners, “ and their decision must, in this case, be conclusive.”
“ The evidence, (i. e. as to the nature of the Improve- “ ment,) however, is proper for consideration in repell- “ ing the fact of this being the place the certificate called “ for; because the actual settlement is descriptive of the “ place located.
“ But from the evidence in relation to George’s im- “ provement, we think the place designated in the plat, “ was the only improvement he had in the country, and “ the one called for in his certificate.” * * * “ This “ having been sufficiently identified, and its notoriety “ satisfactorily proven, and whether it constituted an “ actual settlement having been decided by the commis- “ sioners, we shall proceed to consider the manner of “ surveying the claim.”
One distinction between George’s location, and that now before the Court, is that in the former, the settlement was the only call which even indicated the neighborhood in which the land was situated, and there was nothing else to lead to the vicinity of the settlement itself. It was, therefore, absolutely necessary, not only to identify it; but also to prove its notoriety. In the present case, other notorious objects are called for and identified, so as to leave nothing wanting to fix the precise boundary of the claim, but the identification of the position of the object called for as McNeil’s improvement. And the improvement shown being identified as McNeil’s improvement, and known as such in the immediate vicinity of the notorious object called for as the beginning of the location, it is obvious that, if the opinion just quoted be the law, and if the process of reason *150 ing by which the Court comes, in that case, to the con-elusion that the improvement shown is the object called for as a settlement, may now be applied to a similar case> ^ will be impossible to avoid the conclusion that, even if McNeil’s location be understood as calling for his settlement, the improvement shown is sufficiently identified as the object called for. The prevailing considerations that led to the conclusion in that case, viz: that George had no other improvement, and that the question whether the one ■ claimed was an actual settlement or not, had been decided by the competent tribunal,- are equally applicable in this.
However this may be, the case of Fryer vs Holder’s ■ heirs, if it is now to be deemed authority, establishes conclusively the following propositions: first — that, in identifying the place or object called for as a settlement in a certificate granted for an actual settlement, it is not necessary to prove, by direct evidence, to the satisfaction of this Court, that the grantee or any other person had actually settled at the place. Second — that it is not necessary to prove that any improvement bearing the marks and characteristics of an actual settlement exists or existed at the place claimed as the position of the object called for as a settlement; and, third — that the want of such marks and characteristics does not conclusively prove that the improvement claimed is not the object called for as a settlement; but that, notwithstanding the absence of such characteristics, it may be identified by reference to other circumstances and considerations. The same positions are deducible from the case of Fishback vs Major, 1 Marshall, 149. In that case, the appellant claimed under a certificate granted to McNitt, in consideration of an actual settlement. The location did not call, either for a settlement or an improvement, but for a sinking spring described by course and distance from a notorious object. As a preemptive right, however, it was required to include the settlement. And an improvement was shown and claimed, at or. near a spring, consisting of a few logs laid so as to form the foundation of a cabin, and some of the undergrowth was cut down. These facts have been ascertained by a *151 reference to the record on which the case was decided. After stating the consideration of the certificate, the Court say — “That such settlement was in fact made, “ the certificate is itself, no doubt, conclusive evidence. “ To establish the claim, however, as a preemption, it is “ still necessary to identify the place where the settle- “ ment was made. This may be bone by the descrip- “ tion of the place contained in the certificate, or by “ proof of the fact dehors the certificate; and we know “ of no other way by which it can be done.” After showing that the spring claimed as the locative object called for, does not correspond either in character or position with the description given in the location, that there was nothing in the improvement claimed indicating.that it had been made by McNitt, much less that it had been a place where he had actually settled, and that there were other springs in the same section corresponding more nearly with the calls of the location, and at some of which there were improvements; and concluding that the description in the certificate does not, therefore, identify the place claimed as the place of the settlement made by McNitt — they proceed to enquire “ how far this has been done by proof dehors the certificate.” In doing which they lay down the proposition that, “proof of this sort may, in this, as in every other case, be either positive or presumptive.” There being, as the opinion states, no positive proof that Mc-Nitt had ever settled at the place claimed, and no other evidence from which any presumption of the fact could arise, except the proof by one witness that the improvement claimed was generally known by the name of Mc-Nitt’s improvement, at the date of the certificate, when two witnesses conversant in the vicinity at the time, say they did not know of any improvement which was called McNitt’s — 'this proof is pronounced to be not very satisfactory. And the Court goes on to say: “But ad- “ mitting the fact that, the improvement was generally “ reputed to be his, at the date of the certificate, still it “ would be but presumptive evidence of his having ac- “ tually settled there; and this presumption, though it “would be, in the absence of all opposing circum *152 «stances, sufficient to establish the fact, yet we ap- “ prehend is more than countervailed by the circum-u stances, that the improvement in question, was in “ truth made by McConnell, and continued to be known «as his, and never acquired the reputation of being “McNitt’s, until after the period when a settlement « made by the latter, would, by law, have entitled him “ to a preemption; and more especially, by the circum- “ stance that, the description in the certificate, when « applied to this place, is inaccurate, and corresponds « better with other places in the same vicinity.” The conclusion was, of course, that the place claimed was not sufficiently identified as the place of McNitt’s actual settlement, and therefore, that the claim as a preemption could not be sustained.
It is evident from the opinion of the Court, that the place claimed as McNitt’s settlement, might have been sufficiently indentified: first — if the descriptive calls in the entry had been such as to lead the subsequent locator, with reasonable certainty, to that place; and it may be inferred that, the want of perfect accuracy in this respect, might have been aided, if the improvement shown at the place claimed, had borne in itself any evidence, either that it had been made by McNitt, or that he had settled there; or, second — it might have been sustained, if it had been proved positively, that he had settled there; or, third — if this had been proved presumptively; and it is to be especially observed that, although the improvement claimed bore in fact no marks or characteristics of having been a place where any body had ever in fact settled — yet, if it had been generally known as McNitt’s improvement, (not as McNitt’s settlement,) that fact would have been deemed sufficient presumptive proof of its being his settlement, or the place of his settlement, or the place where he had actually settled, if the presumption had not been repelled by other circumstances, none of which have any reference to the intrinsic character of the improvement itself, and the strongest of which is that, the description in the certificate (which refers only to the character and *153 position of the spring) is inaccurate, and corresponds better with other places in the same vicinity.
But what bearing could the fact that the improvement shown was generally reputed to be McNitt’s improvement, have had upon the question whether that was the place where he had actually settled? And on what ground could this fact (if it had been proved,) have been considered sufficient to identify the improvement as the place of his actual settlement, when the improvement itself bore none of the marks and characteristics of an actual settlement, and when, if its intrinsic character were to be regarded, it might repel the presumption, if it should not conclusively disprove the fact, that he or any one else had ever settled there? To these questions, we can perceive no answer but this: that the reputation or notoriety of this improvement as McNitt’s, is sufficient, in the absence of any evidence that he had another improvement, to authorize the inference that this improvement was the one for which the certificate was granted, and that, having been determined by the competent tribunal to have been such an improvement as the law, in their opinion, required to constitute and evidence an actual settlement, all further question as to its intrinsic character, or its aptitude to meet the requisitions of the law, as a settlement, is at an end.
This principle is fully disclosed in the case of Fryer vs. Holder's Heirs, and we think it must necessarily be implied in the case of Fishback vs. Major as the basis of the reasoning of the Court; the fundamental proposition of which is, that the certificate is conclusive evidence that McNitt had an actual settlement for which the certificate was granted; and the palpable doctrine of both of the cases is, that the place of settlement may be identified by accurate description of the place, or by presumptive evidence, without reference to the intrinsic character of the improvement existing there: although doubtless the presumption arising from other circumstances would be aided by the aptitude of the improvement itself as evidencing the fact that it had been a place of settlement.
If, then, these cases may now be considered as au *154 thoritative evidences of the law — as to the mode of identifying a call for an improvement or settlement in a settlement certificate, and if the doctrine asserted by tiiem may now ke aPPlied to any case? we cannot hesitate in deciding that, whether the location of McNeil is to be understood as calling for his improvement, or his settlement, the object called for is sufficiently identified for all the purposes for which it is used, by the exhibition of an -improvement known as McNeil’s in the immediate vicinity, bearing the proper relation to the other objects called for, and which is the only improvement he had in that section, and therefore the only one .for which the certificate could have been granted.
Certainly, these cases repudiate the proposition that, because the grantee may choose or happen to express in his location, what the law implies, that the boundary of the land granted to him is to include his improvement •or settlement, for which the land was granted, he is bound, in identifying his location, not merely to show that its calls are such that a subsequent locator may, with reasonable diligence, ascertain with the requisite certainty, what land he intended to appropriate; but to prove by direct evidence that he had complied strictly with the requisitions of the law, in performing the services for which the certificate was granted, and to make out, to the satisfaction of this Court, that the improve-claimed was an actual settlement. And it is obvious, that although in enquiring whether a claim is entitled to preemptive dignity, the question whether the place claimed is identified as the place of the party’s actual settlement, is distinctly made, and such identification by proof is stated to be requisite, yet, in determining upon the mode and effect of the proof made, the restriction contended ■ for was not only not adopted by this Court, at the time when their decisions were made, but the utmost liberality was allowed in respect both to the kind ■of evidence, and its effect. And there is nothing in these cases, nor in any others of that date to which we have been referred, or which we have consulted, which tends to prove that,- so far as the location was to be considered as a mere description of the land intended to *155 be appropriated, any thing more was required, either upon the face of the location, or in the proof by which it was to be supported, than was required in other entries H>f land.
The only object of the location in this certificate, is so to identify the land intended to be appropriated, as that subsequent locators, with the location in their hands, and such knowledge of the country as by reasonable diligence may be acquired, may be enabled to ascertain its position, shape and boundary. This object is common to settlement locations and all other entries made for the purpose of appropriating land under our laws. And we perceive no ground in reason, or in the nature of the thing, for setting up a severer test, either for determining the validity of the settlement location upon its face, or the correspondence of its calls with the external objects to which they may refer, than is adopted for the determination of the same points in regard to other entries.
Each particular call in the location should be understood as merely subsidiary to the general object of the whole description, which is the identification of the land intended to be appropriated; and if, upon the face of the location, as compai’ed with the objects on the ground, there be enough to lead with certainty to the beginning, and if there be such a correspondence of all the calls with the objects shown, and such a relation between the objects themselves, as to leave no reasonable doubt that the objects shown are the objects intended to be called for, and that the land claimed is the identical land intended to be appropriated, we should • not feel justified, except under the most cogent weight of authority, to put the validity of the whole claim upon the collateral enquiry whether an artificial object shown as answering one of several locative calls, had been made according to law.
There is no question that when two locative objects are called for, each of which may affect the figure of the survey, the position of each must be shown. But it seems to us that, where two objects are called for, of which one is so notorious, or so well described that it *156 is easily found and cannot be mistaken, the same exactness of identification cannot be necessary with regard to the other, as would be if it stood alone. Although, therefore, the improvement shown as McNeil’s was not in fact a settlement, it does not follow that the subsequent locator was bound or had a right to reject it absolutely, as wholly insufficient to answer the call in the location. That the deep or wolf sink was the place of beginning, he could not doubt; that McNeil had an improvement in the vicinity, for which the County Court had granted him four hundred acres of land, to begin at the same sink, and to include the improvement for which it was granted, he had no right to doubt. When he found the improvement now shown, and ascertained that it was McNeil’s improvement, and that it was the only one which he, or any one else, had in the immediate vicinity, he might indeed pause, and consider whether the County Court had granted the land in consideration of this slight improvement. But to him this would have been a question of fact and not of law; and it is the same to this Court. He had no right to say, the County Court ought not to have considered this as a sufficient improvement or settlement to authorize the grant, and therefore I will not believe this was the improvement called for.- He had no right to say, if this is the improvement for which the land was granted, the grantee has deceived the County Court, and as, in my judgment, here is no settlement, I will disregard this improvement. And as he could not doubt upon the facts before him, or easily within his reach, that this was the very improvement for which the land was granted, so he could not doubt that this was the very improvement called for in the certificate. Whether this was the object called for, is essentially and exclusively a question of fact; and there being no reasonable doubt upon the fact, the subsequent locator had no right to raise a doubt upon the legal question as to the sufficiency of the improvement to authorize the grant.
The records of this Court and the history of the country render it too certain that both errors and impositions have been committed in granting and obtaining *157 these certificates, for this Court to say, or to allow a subsequent locator to say, as a matter of fact, that the County Courts have not granted, or could not in fact grant, certificates for improvements which were not settlements. A fact thus connected with the existence and history of these locations, must be presumed to have been well known to all persons conversant with them. And when the subsequent locator, enquiring for the objects called for in this location, met with a slight improvement, instead of such a settlement as the law required to constitute the consideration of the grant, the insufficiency of the improvement could not be conclusive evidence to him, that this was not the object called for; because he would know, that the certificate might in point of fact have been granted for such an improvement. And when he found, upon further search and enquiry, that there was in fact no other improvement for which it could have been granted, he would know with reasonable certainty, that it was in fact granted for this, and consequently that this was the object called for. Moreover, although, as has been conceded, this location, upon a technical construction, and according to its legal effect, should be understood as if it called for McNeil’s settlement, yet as it does in fact call for his improvement, and as this actual indication of the sort of object intended, cannot be reasoned out of it, the subsequent locator, knowing that certificates had been granted for improvements not amounting to actual settlements, might be less disappointed at not finding a settlement, and better prepared to believe that, this slight improvement was the object intended, than if' a settlement had been called for eo nomine. To the en-quiry whether the subsequent locator is bound to take knowledge of the error committed by the County Court, we answer that he is bound to make rational inferences from the facts before him, and from the knowledge which must be imputed to him, of the country around him and of the subject in which he is engaged; and when these inferences prove satifiactorily, that the improvement for which a particular certificate has been granted, is not an actual settlement, he does in fact know *158 that the certificate was granted for less than an actual settlement; and if, under such circumstances, he sets up the adjudication of the County Court to prove that a settlement, and not a slight improvement, must be shown, the same adjudication may properly operate on the other side, to prove that the character and sufficiency of the improvement for which the grant was made, is conclusively settled, and that when the improvement for which the grant was made is ascertained, the sufficiency of its character is put beyond question.
While, therefore, we admit the necessity of identifying the improvement shown, so as to prove that it is the object called for, and must and ought to have been known by a subsequent locator, as such, the doctrine which we assert is, that although its position is not precisely discribed in the location, it may be identified, even supposing it to be called for as a settlement: first — . by proving directly that it was his actual settlement made and resided on by him, wh.ich the character of the improvement renders at least highly improbable: second — by proving that it was notoriously known as his settlement, which would be sufficient whatever may be the character of the improyement; or, third — by showing that it was the very improvement for which the certificate was granted, and that upon such enquiry into facts as every subsequent locator was bound to make, lie could have no reasonable doubt that it was so. And upon this proof, also, its intrinsic character would be immaterial.
Upon this last proposition, which is supported expressly by the case of Fryer vs. Holder’s heirs, and implied by that of Fishback vs. Major, and is certainly consistent with the numerous cases which have established the conclusive effect of the certificate, we think the improvement shown by the appellant is sufficiently identified as the object called for, whether the location be understood as calling for an improvement, or a settlement.
The case of Loftus vs. Mitchell’s Heirs, 3 Marshall, 599, has been referred to as contradicting this position *159 as to the mode of identifying the improvement or settlement. And it is true that the court, in that case, lay down the proposition that the grantee of the settlement certificate in that case, should not be permitted to prove that the improvement claimed by him, as the object referred to in his location, was the very improvement for which the certificate was granted, unless the improvement be otherwise shown to be his actual settlement. Whether this proposition was intended to be understood as a rule applicable to all cases in which the improvement or settlement is called for, however unlike they may be to that in which it was announced, we shall not enquire. It has been so urged, and should probably be so understood. Thus understood, it is-in direct conflict with the doctrine avowed in the case of Fryer vs. Holder’s Heirs, and with that which is implied in the case of Fishback vs. Major, as understood by us. It moreover tends, in our opinion, to open the decisions of the County Courts, and thus far conflicts with the numerous cases which have established and recognized the conclusive effect of their certificates. And if inflexibly applied, it deprives the locator of all aid from the most certain description of the position of the object called for (which is the only point really in issue,) if he cannot prove satisfactorily that it is intrinsically what it ought to be; which is no otherwise in issue, than as it may identify the place or position of the object called for.
The case of Davis vs. Gray, 3 Litt. 450, has also been referred to. But in admitting that this location is to be understood as if it called for McNeil’s settlement, and that the improvement shown must be satisfactorily identified as the object called for, we have admitted substantially, all that is expressly asserted in that case. There is nothing there said as to the mode of proof by which the required identification is to be made out. And unless its general reference to the previous decisions of this Court be understood as applying particularly and exclusively to the case of Loftus vs. Mitchell’s Heirs, it cannot be understood as intending to recognize, much less to reassert, any of the peculiar doctrines *160 of that case. But if it is to be so understood — as the position laid down in Loftus vs. Mitchell’s Heirs, and upon which we have remarked, is contrary to former decisions, as above shown, and is against our own sense of the principle applicable to the subject, as deducible from the general course of the more ancient decisions, we feel at liberty to follow the more ancient authorities; and without any abatement of that respect which we have always and unfeignedly felt for the members of the Court by which the two more modern cases were decided — to disregard the rule asserted in Loftus and Mitchell, and said to be recognized in Davis vs. Gray. But, in truth, the case of Davis vs. Gray did not require, and scarcely admitted of, the assertion or application of any exact rule for the identification of the improvement; much less did it present an occasion for the establishment of a universal rule which should be rigidly applied to all settlement certificates containing a call for the improvement or settlement. Nor did the Court profess to establish any such rule, but merely to state, up,on a general reference to previous decisions, the necessity of identifying an improvement called for in a settlement certificate, as the actual settlement of the party. It is . easy to conceive that, if the identification of the improvement in that case would have availed to save the land, the proof of it might well have been required to be more direct and positive than in a case in which the location, as in this case, calls for other objects accurately described, or notoriously known, and all pointing, though not with .absolute precision, to the place where the improvement intended should be actually found.
Suppose the location in a settlement certificate had called to begin at the centre of the salt spring on the south side of Licking, at the lower Blue Licks, and to run certain distances north, east, south and west, to include, or so as to include, the improvement, or ‘ his settlement;’ and it appeared that, there was an improvement known as the grantee’s improvement, within the lines run according to course and distance as called for, and that he had no other improvement in the vicinity; but that the improvement had none of the distinguishing *161 marks and characteristics of an actual settlement: could there be any doubt, upon these facts, as to the identity of the land intended to be appropriated ? Could there be any doubt that the improvement found within the defined boundary, was the identical object intended by the call for the improvement or settlement? Would the fact that, it had not the appearance of being the settlement of any body, or would any proof that it had been settled in fact by any other than the grantee, throw the slightest doubt upon the identity of the land intended to be appropriated, or the identity of the object intended to be called for? And if the man must be deprived of the land in such a case, because he has failed to show that he and no body else had actually settled on the spot shown as answering the call for his improvement or settlement, is it not obvious that such a result would not be produced by any actual doubt as to the identity, either of the land, or of the particular object called for? It could only be produced by the application of some rule for the identification of objects, which goes beyond all the legitimate purposes for which identification is required, and which, under the form of exacting proof of identity, exacts rigorous proof of the original performance of the acts which, according to law, should have been the consideration of the grant. In fine, would it not be entirely manifest that, if the grantee of such a certificate loses the land to a junior locator, he loses it because, in the opinion of his Judges, he never made an actual settlement in that vicinity — because he is convicted of imposing upon the County Court, and because, therefore, he does not deserve to have the land? And are not these questions admitted to be conclusively settled by the certificate of the County Court? The rule which leads to such a result certainly finds no sanction in the cases of Fryer vs. Holder’s Heirs and Fichback vs. Major; nor in the numerous cases which have established and recognized the conclusive effect of the certificate as evidence of an actual settlement. It obviously tends to open the decisions of the County Courts when the location calls for the improvement or settlement; produces a distinction, seemingly unjust and without *162 sufficient foundation, between such locations as call for the settlement, and such as do not, and subjects the former to a test which would not be applied to ordinary entries. That it would, if rigidly enforced, lead to the result which has just been supposed, shows that, if it ever has been established, it ought not to be maintained as an inflexible rule. And under our convictions, as to the weight of authority and of reason, growing out of the principles decided upon the subject, we cannot adopt the rule, nor decide that, when there is not in fact any reasonable ground to doubt that the object shown is the object intended to be called for, there must still be proof that the object shown is such as it ought to have been, under a standard to be applied by this Court, in particular cases, but which may not have been applied, or intended to be applied, by the County Courts in all cases.
A recital in an assignment of a settlement certificate, that the fr^resMeíon'the land, can have the evaMityP°of thegrantjitison-during *toprove the recited fact; while the certificate is conclusive in favor of the grantee s right to the land — res adjudicata.
From the view which we have taken, it follows that, so far as ^g identification of the improvement or settler ment is concerned, the statement in the assignment of t^ie certificate, that McNeil had never lived on the land, can have no material bearing against the identification, It tends.to show, that there was in fact no settlement, and that a mere improvement was the foundation of the grant, and the real object intended to be called for. But as the recital in the assignment is no estoppel, but , . . ° . • merely evidence conducing to prove the recited fact, it ¿06s not prevent the assignee from relying on the con- . 1 ^ ° . elusive eflect of the certificate, as evidencing the right †0 the four hundred acres of land described in it, and cannot, therefore, operate to the direct destruction of the,grant. No such grant or certificate has ever been permitted to be destroyed by directly proving the absence or insufficiency of the cause or consideration on which it purports to be founded. And it is for this reason, and because this Court has always denied to itself the right of enquiring, directly and with a view of determining the validity of the grant, into the sufficiency of the consideration, or the existence of the fact on which it purports to. be founded, that we have thought that we should not make such inquiry in a collateral *163 way (but essentially with the same effect,) unless it is rendered absolutely necessary by the absence of all other reasonable means of ascertaining the identity of the object called for. ‘
We are, therefore, of the opinion that the complainant has sufficiently established his claim under the certificate and location of Simon McNeil. And, as it appears that a considerable portion of the land which is embraced in his survey as actually made, would also be embraced in the entry when surveyed as herein before directed: we are of the opinion that, for so much of the land as would be embraced, in common, by the survey already made, and by that herein directed, and also by the patents of the defendants, the complainant has shown the better equity, and is entitled to a conveyance of the legal title of the defendants to the same. And if, upon making the survey, it should be found that McNeil’s improvement will not be included in a square, when laid down as above directed, the complainant’s location will only be good against the elder patents of the defendants, for so much of the land included in the survey as actually made, as will also be included in each of the two rectangular parallelograms, which may be laid upon the diagonal line running from the deep or wolf sink to the farther extremity of the improvement; so as to include it. And the complainant’s right to a conveyance of the legal title, will be limited accordingly.
The Circuit Court, therefore, erred in dismissing the bill, and refusing relief to the extent above designated. Wherefore, the decree is reversed, and the cause remanded that a decree may be rendered in conformity with this opinion: reserving, to the infant defendants, the usual privileges of showing cause against the decree after they attain full age.